

RECEIVED
IN LAKE CHARLES, LA

SEP 1 7 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | : | DOCKET NO. 2:14CR00074-001 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| MARK THOMPSON | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is the defendant's Motion to Suppress (Rec. Doc. 81). This motion has been opposed by the Government (Rec. Doc. 85).

### FACTS

On March 20, 2014, the defendant, Mark Thompson ("Thompson"), arrived at the Houston airport on a flight from Singapore. Transportation Security Administration ("TSA") agents accompanied by United States Department of Homeland Security ("DHS") agents approached Thompson during his disembarkment. The agents escorted him to a room in the airport to get his version of events regarding an earlier received complaint regarding him and his co-defendant, Rosalie Dornellas. Initially Thompson cooperated with agents, but declined to continue the interview when presented with a waiver of rights form that the agents asked him to sign. When Thompson refused to sign the waiver, DHS agents handcuffed him and read him his *Miranda* warnings.

DHS agents then seized his cell phones, computer, and an external hard drive. When asked by Thompson if they had a warrant to do so, they allegedly responded that they were Homeland

Security and they did not need a warrant.[1]  On site, DHS agents performed data extractions on both a Nokia cell phone and an iPhone seized from Thompson, completely downloading and copying their contents, including all personal information.  When prompted by agents, Thompson provided passwords for his computer, the contents of which were similarly seized.  The Government did not have a warrant and Thompson did not execute a waiver,

Law

*Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968), recognized a "narrowly drawn" exception to the probable-cause requirement of the Fourth Amendment for certain seizures of the person that do not rise to the level of full arrests. *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568 (1985).  Two justifications supported this "major development in Fourth Amendment jurisprudence." *Pennsylvania v. Mimms*, 434 U.S. 106, 115, 98 S.Ct. 330, 336, 54 L.Ed.2d 331 (1977) (STEVENS, J., dissenting).  First, a legitimate Terry stop—brief and narrowly circumscribed—was said to involve a "wholly different kind of intrusion upon individual freedom" than a traditional arrest. *Terry*, 392 U.S., at 26, 88 S.Ct., at 1882.  Second, under some circumstances, the government's interest in preventing imminent criminal activity could be substantial enough to outweigh the still-serious privacy interests implicated by a limited *Terry* stop. *Id.*, at 27, 88 S.Ct., at 1883.  Thus, when the intrusion on the individual is minimal, and when law enforcement interests outweigh the privacy interests infringed in a *Terry* encounter, a stop based on objectively reasonable and articulable suspicions, rather than upon probable cause, is consistent with the Fourth

---

[1]  At this point in the recitation of facts, the Government disagrees with the defendant's version of the agents' statement of their authority.  The Government submits that the agents informed Thompson that they were seizing his items pursuant to their border search authority.

2

Amendment.[2]

It is within the power of the Federal Government to exclude aliens from the country. *Chae Chan Ping v. United States*, 130 U.S. 581, 603—604, 9 S.Ct. 623, 628—629, 32 L.Ed. 1068. It is also without doubt that this power can be effectuated by routine inspections and searches of individuals or conveyances seeking to cross our borders. *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535 (1973). As the Court stated in *Carroll v. United States*: 'Travellers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in.' 267 U.S., at 154, 45 S.Ct., at 285. See also *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746.

Whatever the permissible scope of intrusiveness of a routine border search might be, searches

---

[2] The following special law enforcement needs have been found sufficient to justify a minimally intrusive stop based on reasonable suspicion: protective weapons searches, *Terry, Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 52 L.Ed.2d 612 (1972); border searches for illegal aliens, *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); **airport searches** for suspected drug trafficking, *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), *Place v. United States*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); stops to investigate past felonies, *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). In *Royer,* the court referred to stops to investigate "illegal transactions in drugs or other serious crime." 460 U.S., at 499, 103 S.Ct., at 1324. The court has never suggested that all law enforcement objectives, such as the investigation of possessory offenses, outweigh the individual interests infringed upon. *Cf. Brinegar v. United States*, 338 U.S. 160, 183, 69 S.Ct. 1302, 1314, 93 L.Ed. 1879 (1949) (Jackson, J., dissenting) ("[J]udicial exceptions to the Fourth Amendment ... should depend somewhat upon the gravity of the offense"). Respondents in this case were suspected of offloading large quantities of drugs from vessels that had recently arrived at the coast, an activity that, under *Place*, triggers sufficiently special and important law enforcement interests to justify a *Terry* stop.

3

of this kind may in certain circumstances take place not only at the border itself, but at its functional equivalents as well. *Almeida-Sanchez* at 273.  For example, searches at an established station near the border, at a point marking the confluence of two or more roads that extend from the border, might be functional equivalents of border searches. For another example, a search of the passengers and cargo of an airplane arriving at a St. Louis airport after a nonstop flight from Mexico City would clearly be the functional equivalent of a border search.[3]

In *United States v. Stone*, 659 F.2d 569 the Fifth Circuit held that the "critical fact" to which a court  must look in determining whether the border search exception applies is "whether or not a border crossing has occurred,"-not the point of origin of the defendant's journey.[4] *Stone* at 573. Stone involved a border search of a small aircraft, which was intercepted flying low from international airspace toward Florida. When the plane landed at Orlando International Airport, agents conducted a warrantless border search that revealed several hundred pounds of narcotics. *Id.* at 571. The defendant moved to suppress the evidence on the ground that the border exception did not apply because the Government had failed to "demonstrate not only that a border has been crossed but, additionally, that the entering craft has left foreign land." *Id.*

Although the Supreme Court has not addressed specifically the search of computer equipment at the border, or by extension, cell phones, other federal courts have agreed that such

---

[3] With respect to aircraft, 8 CFR s 281.1 defines 'reasonable distance' as 'any distance fixed pursuant to paragraph (b) of this section.' Paragraph (b) authorizes the Commissioner of Immigration and Naturalization to approve searches at a greater distance than 100 air miles from a border 'because of unusual circumstances.'

[4] In Stone, the district court rejected the argument that the border search exception applied, though it upheld the motion to suppress on the ground that "the existence of probable cause and exigent circumstances rendered the search fully reasonable under the [F]ourth [A]mendment." 659 F.2d at 570. We affirmed on different grounds, for the reasons stated above.

searches do not require reasonable suspicion. *United States v. Bunty,* 617 F.Supp.2d 359 (E.D.Pa., 2008). *See, e.g., United States v. Linarez–Delgado,* 259 Fed.App'x. 506, 508 (3d Cir.2007) ("Customs Officers exercise broad authority to conduct routine searches and seizures for which the Fourth Amendment does not require a warrant, consent, or reasonable suspicion ... Data storage media and electronic equipment, such as films, computer devices, and videotapes, may be inspected and viewed during a reasonable border search." (citations omitted)); *United States v. Arnold,* 523 F.3d 941, 946 (9th Cir.2008) ("[W]e are satisfied that reasonable suspicion is not needed for customs officials to search a laptop or other personal electronic storage devices at the border."); *United States v. Hampe,* 2007 WL 1192365, at *4 (D.Me. Apr.18, 2007) (finding that a computer search at the border limited to opening and perusing files with icons located on the computer's desktop was routine and did not require reasonable suspicion); cf. *United States v. Ickes,* 393 F.3d 501, 503–05 (4th Cir.2005) (finding that the Government's search of a computer and disks found in a car at the border fell within the scope of searches permitted by 19 U.S.C. § 1581(a)).[5]

Houston International Airport is an international border for the purposes of border authority when inspecting passengers arriving from other countries.   Thompson's electronic devices were seized and searched at the airport and the devices were returned to him through his designated custodian.

Thompson  has not pointed to any aspect of the March 20, 2104 border search that would

---

[5] 19 U.S.C. § 1581(a) provides:   Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters, ... or at any other authorized place ... and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board ...

distinguish it from other routine computer searches at the border. Therefore, the Court is satisfied that reasonable suspicion was not necessary in this case.

It is defendant's burden on motion to suppress to prove a Fourth Amendment violation, but once he does so, the burden shifts to the government to demonstrate why evidence obtained in an illegal search or seizure should not be excluded. U.S.C.A. Const.Amend. 4. *United States v. Ellis,* 330 F.3d 677 (5th Cir. 2003). Thompson has alleged a Fourth Amendment violation occurred. The Government has established an applicable exception to the warrant requirement. Since the facts are undisputed, no hearing is necessary.

The court finds that the agents at the Houston International Airport were within their authority to search and seize the data brought into the United States by Thompson. This is an established exception to the warrant requirement. Accordingly, the defendant's motion will be denied.

Lake Charles, Louisiana, this __16__ day of September, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

6